IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br> v.<br><br>Aerosols Danville, Inc., et al.,<br><br>   Defendants. | Civil Action No. 25-10115-WGY<br><br><br><br>Consolidated with: |
| Commonwealth of Massachusetts,<br><br>   Plaintiff,<br><br> v.<br><br>Aerosols Danville, Inc., et al.,<br><br>   Defendants. | Civil Action No. 25-10118-WGY |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
<u>CONSENTED-TO MOTION TO ENTER CONSENT DECREE</u>**

Plaintiffs, United States of America and the Commonwealth of Massachusetts, move to enter the Consent Decree lodged in this case because it is fair, reasonable, and in the public interest. The Consent Decree ("CD"), which was lodged with the Court on January 16, 2025 (ECF. No. 4-1) and is attached to this Motion[1] settles Plaintiffs' claims seeking damages for injuries to certain natural resources caused by releases of hazardous substances and hazardous materials at

---

[1] The United States has refiled the Consent Decree as an attachment to the present motion so that the cover page reflects the case number.

the Shpack Landfill Site ("Site"), located in Attleboro and Norton, Massachusetts. In the Consent Decree, Defendants and the United States, on behalf of the U.S. Department of Energy, agree to pay $2,100,000 to fund natural resource restoration and to reimburse assessment costs incurred by the U.S. Department of the Interior and the Commonwealth.  CD ¶¶ 5.a-c & 9.a-c.

Consistent with the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*, and 28 C.F.R. § 50.7, the United States published a notice of the settlement and lodging of the Consent Decree in the Federal Register on January 23, 2025.  *See* 90 Fed. Reg. 8049.  The Notice informed the public that comments concerning the settlement could be filed with the United States Department of Justice within thirty days of the date of the notice.  The comment period has ended, and the United States has received no comments.  Because the proposed settlement is fair, reasonable, and consistent with the objectives of CERCLA and the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, Mass. Gen. Laws ch. 21E, §§ 1-22 ("Chapter 21E"), Plaintiffs respectfully request that the Court sign the Consent Decree and enter it as a final judgment.  Settling Defendants consent to and do not oppose entry of the Consent Decree.  *See* CD ¶¶ 35, 37.

## I. BACKGROUND

### A. Allegations in the Complaints

On January 16, 2025, the United States filed a complaint in the above-captioned action.  Civil Action No. 25-10115, ECF No. 1 (*hereinafter* "U.S. Complaint").  On the same date, the Commonwealth filed a complaint that was

docketed as ECF No. 1 in Civil Action No. 25-10118 (*hereinafter* "Mass. Complaint"). On an assented-to motion filed by the United States, the Court subsequently consolidated the two actions and closed Civil Action No. 25-10118. ECF Nos. 7 & 8.

Plaintiffs' complaints relate to injuries to natural resources resulting from releases of hazardous substances and hazardous materials at the Site, which encompasses a former town dump that operated from 1946 through 1965 and an adjacent private dumping area that operated from 1946 through 1975. U.S. Complaint ¶¶ 12-16. Those dumps received a variety of wastes from local industries and residents. *Id.* Contaminants found at the Site include volatile organic compounds, polychlorinated biphenyls, heavy metals, and radiological compounds. *Id.* ¶ 18. The radiological compounds were likely from nuclear fuel fabrication work performed under contracts with the U.S. Atomic Energy Commission (a predecessor to the U.S. Department of Energy). *Cf.* Mass. Complaint ¶¶ 51-53. Over the course of several decades, the contamination at the Site was investigated and remediated in accordance with CERCLA, a prior consent decree entered by this Court,[2] and other authorities.[3] Remediation work at the Site ended in 2014. *See* Second Five-Year Review at 11.

The United States and the Commonwealth alleged in their respective complaints that releases of hazardous substances and hazardous materials at the

---

[2] *See United States v. City of Attleboro et al.*, Case No. 1:08-cv-12038 (D. Mass.) (consent decree entered Jan. 27, 2009).

[3] Second Five-Year Review Report for Shpack Landfill Superfund Site at 7-11 (USEPA 2023), https://semspub.epa.gov/work/01/100026608.pdf (last visited February 24, 2025) [*hereinafter* "Second Five-Year Review"].

3

Site caused injuries to natural resources at the Site, including injuries to sediment, soil, wetlands, and wildlife, and those injuries resulted in a loss of those resources as well as the ecological services that those resources would otherwise have provided.  U.S. Complaint ¶¶ 19-27; Mass. Complaint ¶¶ 58-60.  In its complaint, the United States seeks natural resource damages ("NRD") and the recovery of its NRD assessment costs, under Section 107 of CERCLA, 42 U.S.C. § 9607, from fourteen defendants ("Settling Defendants").[4]  U.S. Complaint ¶¶ 40-47.  The Commonwealth similarly seeks NRD related to the Site and the recovery of its NRD assessment costs from the same fourteen Settling Defendants, under Section 107 of CERCLA, 42 U.S.C. § 9607, and Section 5 of Chapter 21E, Mass. Gen. Laws ch. 21E, § 5.  Mass. Complaint ¶¶ 62-69, 71-86.  The Commonwealth also seeks the same relief from the United States Department of Energy ("Settling Federal Agency"), under Section 107 of CERCLA, 42 U.S.C. § 9607.[5]  *Id.* ¶¶ 62-68, 70, 74.  If this matter were litigated, Settling Defendants would likely assert counterclaims in contribution against the Settling Federal Agency.

---

[4] For the avoidance of doubt, the use of the term "Settling Defendants" in this brief is not intended to (and does not) suggest that there are other, non-settling defendants.  Rather, the use of that term herein aligns with the terminology used in the proposed Consent Decree.  Entry of the proposed Consent Decree by the Court would resolve all claims that are asserted in the complaints filed by the United States and the Commonwealth in this consolidated action.

[5] While the Commonwealth's complaint names the United States Department of Energy as a defendant, it is referred to in this brief and in the proposed Consent Decree as the "Settling Federal Agency."

## B. Terms of the Consent Decree

The proposed Consent Decree requires the Settling Defendants and the Settling Federal Agency to fund one or more natural resource restoration projects that will be selected by the natural resources trustees, the U.S. Department of the Interior and the Secretary of the Massachusetts Executive Office of Energy and Environmental Affairs (collectively "Trustees"), after a public process and to reimburse the Trustees for their unpaid past assessment costs. CD ¶ 4. Under the settlement, the Settling Defendants and the Settling Federal Agency will pay a total of $2,100,000 to the Trustees. CD ¶¶ 5.a-c, 9.a-c. Of that amount, $1,854,457.23 will go toward the restoration of natural resources, and the remaining $245,542.77 will reimburse the Trustees' past assessment costs. *Id.* Of the total $2,100,000 settlement amount, the Settling Defendants will pay $1,428,000 (68 percent of the total amount) and the Settling Federal Agency will page $672,000 (32 percent of the total amount). *Id.*

The specific restoration project or projects have not yet been selected. The Consent Decree states that that Trustees intend to prepare a Restoration Plan that will identify how funds will be used for the restoration, rehabilitation, replacement, or acquisition of equivalent resources. CD ¶ 13. The Restoration Plan may also identify how funds will be used to address services lost to the public until restoration, rehabilitation, replacement, and/or acquisition of equivalent resources is completed. *Id.*

Subject to certain reservations and upon entry of the Consent Decree as a final judgment:

5

>   (1) the United States has covenanted not to sue the Settling Defendants for natural resource damages ("NRD") related to the Site under CERCLA 107, 42 U.S.C. § 9607;
>
>   (2) the U.S. Department of the Interior has covenanted not to take administrative action against the Settling Federal Agency for NRD related to the Site under CERCLA Section 107, 42 U.S.C. § 9607;
>
>   (3) the Commonwealth has covenanted not to sue the Settling Defendants for NRD related to the Site under CERCLA 107, 42 U.S.C. § 9607, and under Chapter 21E; and
>
>   (4) the Commonwealth has covenanted not to sue the Settling Federal Agency for NRD related to the Site under CERCLA 107, 42 U.S.C. § 9607.

*See* CD ¶¶ 15-18.

## II. STATUTORY SCHEME

Congress enacted CERCLA in 1980 in response to serious environmental problems posed by improper handling, treatment, and disposal of hazardous substances. *See, e.g.*, *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1039-40 (2d Cir. 1985). The statute provides federal and state governments with broad authority to investigate and clean up hazardous waste sites, to compel responsible parties to clean up such sites, and to obtain reimbursement from such parties of costs incurred by the government. 42 U.S.C. §§ 9604(a), 9606, 9607; *see also United States v. Occidental Chemical Corp.*, 200 F.3d 143, 147 (3d Cir. 1999). The statute also enables federal and state trustees to recover damages on behalf of the public for injuries to, destruction of, loss of, or loss of use of natural resources, including the

reasonable costs of assessing such injury, destruction, or loss resulting from such a release.  42 U.S.C. § 9607(a)(4).

CERCLA and U.S. Department of Justice regulations provide an opportunity for the public to review and comment on certain types of proposed settlements.  42 U.S.C. § 9622(d)(2); 28 C.F.R. § 50.7.  Consistent with those authorities, the United States typically lodges a proposed consent decree with the appropriate court, publishes notice of such lodging in the Federal Register, and in such notice solicits comments from the public for a specified period of time (typically, as in this case, 30 days).  The United States thereafter considers all comments timely submitted and determines whether they "disclose facts or considerations which indicate that the proposed judgment is inappropriate, improper, or inadequate."  42 U.S.C. § 9622(d)(2); 28 C.F.R. § 50.7.  If the United States determines that the answer to such question is no, it files a motion to enter the consent decree, discussing the reasons for its determination and including copies of the comments for the Court's consideration.

The Massachusetts legislature enacted Chapter 21E in 1983 in response to serious environmental problems posed by improper handling, treatment, and disposal of oil and hazardous materials in Massachusetts.  *See, e.g.*, *Guaranty-First Trust Co. v. Textron, Inc.*, 416 Mass. 332, 335, 622 N.E.2d 597 (1993) (recognizing that Chapter 21E was enacted "to improve the Commonwealth's capability to respond to environmental contamination and to recover response costs from persons responsible for the contamination.").  Chapter 21E provides the Commonwealth

with broad authority to investigate and clean up oil and hazardous material sites, to compel certain parties to clean up such sites, and to obtain reimbursement from such parties of costs incurred by the Commonwealth.  Mass. Gen. Laws ch. 21E, §§ 4, 5, and 9. Chapter 21E also enables the Commonwealth to recover "damages for injury to and for destruction or loss of natural resources, including the costs of assessing and evaluating such injury, destruction or loss[.]"  Mass. Gen. Laws ch. 21E, § 5(a)(ii); *see also* Mass. Gen. Laws ch. 21A, § 2A.

### III.  STANDARD OF REVIEW

When a district court considers a consent decree that resolves claims under federal environmental law, the district court should enter the decree if it is procedurally and substantively fair, reasonable, and consistent with the statute.  *City of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 93 (1st Cir. 2008); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) (district court reviews a consent decree to ensure it is "fair, reasonable, and faithful to the objectives of the governing statute").

In determining whether this standard has been met, the Court should recognize the strong policy of encouraging voluntary settlement of litigation.  *See Cannons Eng'g Corp.*, 899 F.2d at 86; *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986); *United States v. Hooker Chems. & Plastics Corp.*, 776 F.2d 410, 411 (2d Cir. 1985); *Donovan v. Robbins*, 752 F.2d 1170, 1176-77 (7th Cir. 1985).  Though district courts exercise independent judgment when reviewing proposed settlements, they defer heavily to the parties' agreement and agency's expertise.  *United States v. Charles George Trucking, Inc.*, 34 F.3d 1081,

1085 (1st Cir. 1994). The policy of encouraging settlements has "particular force where, as here, a government actor committed to the protection of the public interest has [engaged in the construction of the] proposed settlement," *Cannons Eng'g Corp.*, 899 F.2d at 84, and where that government actor is "specially equipped, trained, and oriented in the field," *United States v. Nat'l Broad. Co.*, 449 F. Supp. 1127, 1144 (C.D. Cal. 1978). In reviewing a settlement involving a governmental agency, "the district court must exercise some deference to the agency's determination that settlement is appropriate." *Conservation Law Found. v. Franklin*, 989 F.2d 54, 58 (1st Cir. 1993) (quoting *Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987)).

This limited standard of review for governmental actions reflects a public policy "in favor of encouraging settlements[,] especially in complicated regulatory settings." *Conservation Law Found.*, 989 F.2d at 59 (citations omitted). Moreover, the policy favoring settlement "is particularly strong where a consent decree has been negotiated by the Department of Justice" on behalf of federal agencies and by the Massachusetts Attorney General's Office on behalf of the state natural resource trustee. *See United States v. Cannons*, 720 F. Supp. 1027, 1035 (D. Mass. 1989).

The proposed settlement before this Court resolves natural resource damages claims brought by the United States and the Commonwealth. Given the expertise of the Plaintiffs and their respective agencies, the Court should defer to their conclusion that the settlement is warranted and justified.

9

## IV. THIS COURT SHOULD ENTER THE CONSENT DECREE BECAUSE IT IS FAIR, REASONABLE, AND CONSISTENT WITH THE PURPOSES OF CERCLA AND CHAPTER 21E

### A. The Consent Decree is Procedurally and Substantively Fair

In reviewing a decree for procedural fairness, this Court should attempt to "gauge [the negotiating process's] candor, openness, and bargaining balance." *Cannons Eng'g Corp.*, 899 F.2d at 86.  Relevant facts in determining procedural fairness include whether "the cards have been dealt face up," *i.e.*, whether the parties exchanged the information relevant to the fairness of a settlement, whether the parties have conflicting interests, and whether the parties are represented by experienced attorneys.  *Id.* at 84.  Here, the United States, the Commonwealth, and the Settling Defendants conducted negotiations while represented by experienced counsel.  The Commonwealth's interests were adverse to those of Settling Defendants and the Settling Federal Agency.  And the Settling Defendants' interests were adverse to those of United States, on behalf of both U.S. Department of the Interior and the Settling Federal Agency.  The key terms of the settlement memorialized in the Consent Decree were negotiated during numerous settlement discussions and exchanges between the parties over the course of several years.  All negotiations were conducted at arms-length and in good faith.  Thus, the Consent Decree is procedurally fair.

The Consent Decree is also substantively fair.  Substantive fairness "introduces into the equation concepts of corrective justice and accountability:  a party should bear the cost of the harm for which it is legally responsible." *Cannons*, 899 F.2d at 87.  Courts analyze substantive fairness based upon the equity of the

10

settlement in relation to the risks of litigation, and in some measure, comparative fault and other pertinent factors. *See id.* at 86-88; *see also United States v. Dibiase*, 45 F.3d 541, 544-46 (1st Cir. 1995); *Charles George Trucking*, 34 F.3d at 1089. Here, the Consent Decree is substantively fair because, based on the alleged liability of the Settling Defendants and Settling Federal Agency, they are required to fund one or more Trustee-sponsored natural resource restoration projects and provide compensation for past assessment costs incurred by the Trustees.

The proposed Consent Decree is also fair as between the Settling Defendants and Settling Federal Agency. Some radioactive contaminants at the Site originated from contracts between the predecessors of BASF Catalysts and Texas Instruments and the U.S. Atomic Energy Commission, a predecessor to the Settling Federal Agency, to produce nuclear fuel components. There are other contaminants at the Site not linked to contracts with the Atomic Energy Commission, but which are linked to some of the Settling Defendants.

The Settling Federal Agency will pay $672,000 (32% of the $2,100,000 settlement amount) and Settling Defendants will pay $1,428,000 (68% of the $2,100,000 settlement amount). These "necessarily imprecise" amounts are, in the informed judgment of all the settling parties, "roughly correlated" with the parties' comparative fault and are substantively fair. *Cannons Eng'g,* 899 F.2d at 87. Accordingly, the proposed Consent Decree is also fair as between the Settling Defendants and Settling Federal Agency.

## B. The Consent Decree is Reasonable

The factors primarily relevant to determining whether a CERCLA settlement is reasonable in this matter are:[6] (1) whether the decree satisfactorily compensates the public for costs expended; and (2) the risks and delays inherent in litigation. *Cannons*, 899 F.2d at 89-90.  The first factor of the reasonableness inquiry is satisfied because the Settling Defendants and the Settling Federal Agency will compensate the public for the ecological losses associated with the injury to and destruction of natural resources at the Site by funding one or more restoration projects selected by the Trustees that will offset those injuries.  The Trustees will use those funds to pay the costs associated with restoring, rehabilitating, or replacing the injured natural resources.  In addition, the Settling Defendants and the Settling Federal Agency have agreed to reimburse the Trustees for their unpaid assessment costs.  As described above, the Trustees intend to prepare a Restoration Plan describing how the funds will be used.  That Plan, like this proposed Consent Decree, will be subject to public notice and comment.  Following the Trustees' receipt of public comments on the proposed Plan, the Trustees must unanimously agree on the Plan.  The proposed Consent Decree satisfies the second reasonableness factor because it ensures that the restoration is not delayed during the complex and potentially prolonged litigation that would have occurred in the absence of the parties' agreement to settle this matter.

---

[6] Although the "probable effectiveness of proposed remedial responses" is a key factor to determining the reasonableness of most CERCLA settlements, it is not relevant here as the remedial action has already been completed. *Cannons*, 899 F.2d at 90. Here, the parties are addressing harm to natural resources.

### C. The Consent Decree is Consistent with the Goals of CERCLA and Chapter 21E

The settlement also is faithful to the statutory schemes of CERCLA and Chapter 21E. As noted, this settlement meets a primary objective of both acts because the Settling Defendants and the Settling Federal Agency are required to fund the restoration of natural resources allegedly injured by the releases of hazardous substances and hazardous materials at the Site. The Trustees will use those funds to implement one or more restoration projects necessary to offset the alleged natural resource injuries. The Consent Decree also serves the goal of reducing, where possible, the litigation and transaction costs associated with compensating the public for injuries to natural resources. *See Cannons*, 899 F.2d at 90. Additionally, this Consent Decree is consistent with the public policy that favors settlement as a means to reduce the costs of litigants and the burdens on the courts. *See, e.g.*, *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

## V. CONCLUSION

The proposed Consent Decree, lodged on January 16, 2025, provides a full and fair resolution of the dispute between the United States, including the Settling Federal Agency, and the Commonwealth and the Settling Defendants concerning the allegations in the Plaintiffs' complaints. The settlement is fair, reasonable, and consistent with CERCLA and Chapter 21E. Accordingly, the Court should grant this Motion, sign and enter the Consent Decree attached to this motion on page 24, and direct the Clerk to enter the Consent Decree as a final judgment.

Respectfully submitted,

For the United States:

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General

*/s/ Andrew W. Keir*
Andrew W. Keir
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
andrew.w.keir@usdoj.gov
(202) 532-2228

Phillip R. Dupre
Senior Attorney
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044 7611
Phillip.R.Dupre@usdoj.gov
(202) 616-7501


LEAH B. FOLEY
United States Attorney
District of Massachusetts

Hillary H. Harnett
Assistant United States Attorney
U.S. Attorney's Office
John J. Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
Hillary.Harnett@usdoj.gov
(617) 748-3252

For the Commonwealth of Massachusetts:

ANDREA JOY CAMPBELL
*Attorney General*

<u>*/s/ Seth Schofield*</u>
Seth Schofield, BBO No. 661210
Senior Appellate Counsel
Energy and Environment Bureau
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617) 963-2436
seth.schofield@mass.gov